IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JERMAINE MITCHELL, #205893, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-249-WHA |
| | ) | [WO] |
| | ) | |
| WILLIAM WYNNE, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Jermaine Mitchell ("Mitchell"), an indigent state inmate confined at the Hamilton Aged and Infirmed Facility ("Hamilton").  *Doc. No. 5*.  Mitchell subsequently filed an amendment to the complaint on November 29, 2012.  *Doc. No. 35*.  In these pleadings, Mitchell alleges, *inter alia*, that the defendants violated various state statutes during the parole consideration process which resulted in the decision to deny him parole on January 25, 2012.  Mitchell also challenges the constitutionality of the parole consideration process and the decision to deny him parole. The defendants in this cause of action are William Wynne, Jr., Robert Longshore and Cliff Walker, members of the Alabama Board of Pardons and Paroles; Robert Bentley, Governor of the State of Alabama; and Kim Thomas, Commissioner of the Alabama Department of Corrections.  Mitchell seeks declaratory

relief, production of various parole documents and a new parole consideration hearing conducted in a fair manner.

The defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat each of these reports as a motion for summary judgment. *Order of June 11, 2012 - Doc. No. 27*; *see also Order of June 27, 2012 - Doc. No. 29*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof, the sworn complaint, the plaintiff's responses to the reports, including relevant affidavits and documents, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff.  Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).   This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Mitchell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison [and parole] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for

summary judgment, Mitchell is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without

specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

7

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough review of all the evidence contained in the record. After such review, the court finds that Mitchell has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment. *Matsushita*, *supra*.

## III.  MATERIAL FACTS

Mitchell is currently confined in the custody of the Alabama Department of Corrections on convictions for first degree robbery and first degree kidnapping imposed upon him by the Circuit Court of Jefferson County, Alabama. *Exhibit A to the Special Report of Defendant Thomas - Doc. No. 16-1* at 2. On December 19, 2012, the Alabama Board of Pardons and Paroles requested a warden's report on Mitchell from the warden of Hamilton for use in Mithchell's upcoming parole hearing. *Id*. at 4. Warden Freddie Butler compiled the requested report and provided it to the parole board. *Id*. The report detailed Mitchell's criminal convictions and disciplinary history, and also advised that Mitchell was confined to a wheelchair due to a medical condition. *Id*. at 2-4. Prior to conducting the

parole hearing, parole board members also had possession of the Pre-Sentence Report prepared at the time of Mitchell's current convictions and an Institutional Parole Officer Report compiled on January 4, 2012. *Exhibit 1 to the Supplemental Special Report of the Parole Defendants (Aff. of Ken Fetzer, Parole Manager of Board Operations) - Doc. No. 30-1* at 2. The Pre-Sentence Report contains details of Mitchell's robbery and kidnapping convictions, and the report of the parole officer "includes information about Mitchell's personal history, social history, criminal history and information about Mitchell's disability (his being paralyzed)." *Id*.

The board conducted a parole hearing and, on January 25, 2012, defendants Walker and Wynne voted to deny Mitchell parole. *Exhibit 1 to the Special Report of the Parole Defendants (Report of Action by the Board) - Doc. No. 26-1* at 4. The record demonstrates that the denial of parole occurred because the voting members of the parole board did not believe that Mitchell was an acceptable risk for release on parole. *Exhibit 2 to the Supplemental Special Report of the Parole Defendants (Aff. of Cliff Walker) - Doc. No. 30-2* at 2 ("I personally studied Mr. Mitchell's parole file, which included information about his personal history, social history, criminal history, the details of the offenses for each sentence under consideration, an assessment of Mr. Mitchell's adjustment during his sentence, Mr. Mitchell's proposed home [plan] and job program and information about and circumstances surrounding Mr. Mitchell's being paralyzed. In addition to considering the

information in Mr. Mitchell's parole file, I also took testimony from witnesses in attendance at Mr. Mitchell's parole hearing....  When considering Mr. Mitchell for parole, I had all the required investigative reports required by law before me for review and consideration.  Regardless of the fact that Mr. Mitchell is presently paralyzed, I was not of the opinion that Mr. Mitchell's release would be compatible with the welfare of society and that he could live and remain at liberty without violating the law at this time...."); *Exhibit 3 to the Supplemental Special Report of the Parole Defendants (Aff. of William Wynne, Jr.) - Doc. No. 30-3* at 2 (same).  The board members scheduled Mitchell's next parole consideration for December of 2016.  *Exhibit 1 to the Special Report of the Parole Defendants (Report of Action by the Board) - Doc. No. 26-1* at 4

## IV.  DISCUSSION OF CLAIMS

Mitchell asserts that the defendants deprived him of fair consideration for parole in violation of his due process right, as the decision to deny parole allegedly arose from arbitrary and capricious actions.  *Amended Complaint - Doc. No. 5* at 5.  In support of this assertion, Mitchell alleges that the defendants deprived him of due process in the parole consideration process by (1) failing to provide him copies of the information contained in his parole file, the statutes governing parole, and the rules and regulations of the parole board; (2) failing to explain the factors on which the parole board members relied in determining that he was not suited for release on parole; (3) failing to provide him specific

10

reasons for the denial of parole; (5) denying him the opportunity to review the information contained in his parole file; (6) denying him the opportunity to present arguments in favor of parole personally; (7) failing to investigate community reaction to his potential release, the nature and extent of his disability, and community programs which might be available to him under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., if he was released on parole[2]; (8) basing the decision to deny parole on mere opinions; and (9) depriving him of his liberty interest in parole. *Amended Complaint - Doc. No. 5* at 5-15. Mitchell also asserts that defendants Walker and Wynne relied on false information -- i.e., two disciplinaries issued against him in July of 2011 -- to deny him parole. *Amendment to the Complaint - Doc. No. 35* at 2; *Affidavit in Support of Response - Doc. No. 28-1* at 3. Mitchell further challenges the scheduling of his next parole consideration, which was set off for five years, *Amended Complaint - Doc. No. 5* at 2-3; asserts that the parole process deprived him of free speech because only documents compiled by state officials were reviewed, *id*. at 8-9; and argues that denial of parole constitutes cruel and unusual punishment, *id*. at 12. Finally, Mitchell alleges that the defendants violated several state laws during the parole consideration process and in denying him parole. Under applicable federal law, these claims entitle Mitchell to no relief from this court.

---

[2]To the extent that Mitchell asserts a right to release on parole due to his disability, this claim is without merit. The mere fact that an inmate suffers from a disability, even a disability qualified for protection under the Americans with Disablities Act, does not establish a liberty interest in parole.

## A.  Respondeat Superior

Defendants Wynne and Walker are the only defendants who in any manner participated in the decision to deny Mitchell parole.  Thus, the claims against the remaining defendants entitle Mitchell to no relief as these claims are based on theories of respondeat superior and/or vicarious liability.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003)

(concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for actions of defendants Wynne and Walker could attach to the other named defendants only if these other defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation."  *Cottone*, 326 F.3d at 1360.

Mitchell, however, has presented no evidence which would create a genuine issue of disputed fact with respect to the claims lodged against defendants Bentley, Thomas and Longshore.  The only evidentiary materials filed in this case demonstrate that these defendants did not personally participate in or have any involvement with the claims on which Mitchell seeks relief.  In light of the foregoing, defendants Bentely, Thomas and Longshore can be held liable for actions of defendants Wynne and Walker only if their actions bear a causal relationship to the purported violations of Mitchell's constitutional rights and federal law.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Bentley, Thomas and Longshore, Mitchell must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [these defendants] directed [defendants Wynne and Walker] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Mitchell has failed to meet this burden.

The record before the court contains no evidence to support an inference that Bentley, Thomas or Longshore directed Wynne and Walker to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Mitchell has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant to a policy enacted by Bentley, Thomas or Longshore. Thus, the requisite causal connection has not been established between the actions challenged by Mitchell and the conduct of the aforementioned defendants, and

liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendants Bentley, Thomas and Longshore.

### B.  False Information

Mitchell complains that defendants Wynne and Walker relied on false information to deny him parole.  *Amendment to the Complaint - Doc. No. 35* at 2.  Specifically, Mitchell alleges that two disciplinaries imposed upon him in July of 2011 are false because they are based on the purported retaliatory actions of correctional officers.  *Affidavit in Support of Response - Doc. No. 28-1* at 3.  The defendants do not admit the information used in the parole decision-making process was false, and categorically deny any knowing reliance on false information. *Exhibit 2 to the Supplemental Special Report of the Parole Defendants (Aff. of Cliff Walker) - Doc. No. 30-2* at 2 ("As far as I know, the disciplinary reports in Mr. Mitchell's parole file are accurate and truthful.  I have no reason to question the veracity of facts surrounding the two disciplinary actions [challenged by] Mr. Mitchell. I deny knowingly relying on false information to deny Mr. Mitchell parole."); *Exhibit 3 to the Supplemental Special Report of the Parole Defendants (Aff. of William Wynne, Jr.) - Doc. No. 30-3* at 2 (Wynne avers that during the parole consideration process he had no knowledge of any false information in Mitchell's file and denies "knowingly relying on false information to deny [him] parole.").

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance

on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment which violated the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

The defendants maintain that, to their knowledge, the information on which they relied to deny Mitchell parole is correct, and reliance on this information therefore did not

violate Mitchell's constitutional rights. There is no admission by the defendants that the information used in denying Mitchell parole is false, incorrect or erroneous. Mitchell has failed to come forward with any evidence which indicates that the defendants knowingly used false information during the parole consideration process. Moreover, Mitchell's conclusory assertion regarding possible false information does nothing more than raise the possibility that information in his records may be false, and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in their decision to deny Mitchell parole. Consequently, the plaintiff is entitled to no relief as a matter of law and entry of summary judgment in favor of defendants Wynne and Walker is appropriate.

## C. Due Process

Mitchell's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It

does not contain any language that mandates parole... . When the statute is framed in discretionary terms there is not a liberty interest created... . Alabama parole statutes do not create a liberty interest [in parole]... ." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[3] The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process....' ... [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers*, 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

To the extent that Mitchell contends that applicable statutes and regulations create a protected liberty interest in the procedures related to parole consideration, he is likewise entitled to no relief, as this claim is foreclosed by *Slocum*. In *Slocum*, the Eleventh Circuit

---

[3]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates. The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but ***only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society***. If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe....

*Ala. Code* § 15-22-26 (emphasis added). The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board, and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

deemed such a "unique theory ... without merit."  678 F.2d at 942.  The relevant portion

of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration.  Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 941-942.

Mitchell does not possess a liberty interest in being granted parole that is protected

by the Due Process Clause of the Constitution.  *Heard v. Georgia State Board of Pardons*

*and Paroles*, 222 Fed. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437,

1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Absent

the existence of a constitutionally protected liberty interest in parole, "the procedures

followed in making the parole determination are not required to comport with the standards

of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*,

678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas

parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not

"complain of the constitutionality of procedural devices attendant to parole decisions.").

Thus, the procedural due process protections of the Fourteenth Amendment do not apply

to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole

consideration process.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within

time required under parole rules or properly calculate presumptive date of release on parole

does not constitute a violation of due process).

Nevertheless, even though there is no liberty interest involved, a parole board may

not engage in "flagrant or unauthorized action."  *Thomas*, 691 F.2d at 489.  Defendants

Wynne and Walker maintain that they acted in accordance with state law and applicable

administrative regulations when they denied parole to Mitchell.  They also indicate that the

decision to deny parole was based on their determination that Mitchell did not present an

acceptable risk for release on parole. The decision of the parole board members

demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853

(11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Mitchell has failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its members.  Consequently, summary judgment is due to be granted in favor of defendants Wynne and Walker with respect to each of Mitchell's due process claims.

## D.  Cruel and Unusual Punishment

Mitchell contends that the decision to deny him parole constituted cruel and unusual punishment in violation of the Eighth Amendment.  *Amended Complaint - Doc. No. 5* at 12.  The denial of parole does not rise to the level of an Eighth Amendment violation as it is "merely a disappointment rather than a punishment of cruel and unusual proportions." *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 933 (11th Cir. 1986). Summary judgment is therefore due to be granted in favor of the defendants on this claim.

## E.  Retroactive Application of Increase in Parole Set-Off Dates

Mitchell challenges the use of administrative rules adopted after he began service of his current term of incarceration which altered the frequency of parole consideration dates from every three years to every five years, and resulted in his next parole consideration date being set for December of 2016.  *Amended Complaint - Doc. No. 5* at

12. This allegation implicates the protections guaranteed by the Ex Post Facto Clause and the court therefore construes the claim as one arising under this provision of the Constitution.

The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Garner,* 529 U.S. at 255. Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended Georgia rule increasing parole consideration hearings from every three years to every eight years violated the Ex Post

Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249.  In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254.  "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, § 15-22-26*, Ala.Code 1975*, "and when and under what conditions" parole will be granted, § 15-22-24(a), *Ala. Code.* Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26.  This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause. *Garner*, 529 U.S. at 250.  The proper inquiry

23

in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. (internal quotation marks and citation omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles. In 2001, the parole board adopted the rules and regulations relevant to the claims presented in this case. The board amended these rules and regulations in 2004 and 2012. Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to "determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years."[4] *Exhibit 4 to the Special Report of the Parole Defendants - Doc. No. 26-4* at 12. Article 2, § 7 of these rules provides that, after a denial of parole, "the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."[5] *Id*. at 6. In addition, the opportunity for an expedited parole review is likewise available to inmates who have served at least five years in prison as Article 2, § 1 of the rules and

---

[4]The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial." The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11. The parole board retained the five-year set off in its 2004 and 2012 amendments.

[5]The 2001 amendment to the regulation in Article 2, § 8 allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months after the denial of parole as permitted by the 2004 and 2012 amendments.

regulations directs that an inmate in this situation "may file a written request once per calendar year [with parole officials] ... to determine whether it may be appropriate to schedule earlier parole consideration. Such a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison." Thus, the rule changes are designed to facilitate better exercise of the Board's discretion. *Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration from three years to five years does not extend the term of imprisonment imposed upon Mitchell, or increase the level of risk that he will serve a longer term of imprisonment. Specifically, prior to this change, the parole board never guaranteed Mitchell that he would be unconditionally released before completion of his twenty-year sentence. Additionally, eighteen months after the denial of parole Mitchell retains the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for release on parole and, therefore, he could be scheduled for consideration at an earlier date. Hence, even if risk of an increased term of incarceration develops in Mitchell's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year reconsideration interval expires. Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and*

*Paroles*; *Exhibit 4 to the Special Report of the Parole Defendants - Doc. No. 26-4* at 5.

Mitchell has presented no evidence which demonstrates that the regulations at issue create a significant risk of increased punishment. Moreover, Mitchell possesses the ability to petition the parole board for an earlier parole consideration date. Based on the foregoing, the court concludes that the change about which Mitchell complains did not lengthen his actual term of imprisonment. Thus, Mitchell's challenge to the potential increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 Fed.Appx. 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural.... The Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070, 115 S.Ct. 1706 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by the parole board not violative of the Ex Post Facto Clause). Defendants Wynne and Walker are therefore entitled to summary judgment on this claim.

### F.  Free Speech

Mitchell makes the conclusory allegation that the parole consideration process deprived him of free speech "where under the policy and regulation [of the Alabama Board of Pardons and Paroles] the reports, investigations, examinations, and determinations done are spoken by and through [correctional and parole officials]." *Amended Complaint - Doc. No. 5* at 9.  This claim provides no basis for relief, as Mitchell has no right protected by the First Amendment to appear at his parole hearing, review the information in his parole file or submit written documentation in support of parole.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) (Attendant to incarceration is "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights."); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) ("In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner....").

### G.  The Americans with Disabilities Act[6]

Mitchell references the Americans with Disabilities Act Disabilities Act in his amended complaint.  "Under Title II of the ADA, a 'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity.  *See* 42 U.S.C. § 12132."  *Flournoy v. Culver*, 534

---

[6]For purposes of this Recommendation, the court assumes *arguendo* that Mitchell is a qualified individual with a disability and that parole is a program within the purview of the ADA.

Fed. Appx. 848, 851 (11th Cir. 2013).  Title II of the ADA applies to inmates confined in state correctional facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 (11th Cir. 2007) (It is well settled law "that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.").[7]

> "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted). This standard derives from the ADA's language, stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." 42 USC 12112(a)....

*Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263-1264 (11th Cir. 2007).

---

[7]In *United States v. Georgia*, 546 U.S. 151, 152-154 (2006), the Court advised:
> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." §12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," §12131(1).

Defendants Wynne and Walker deny violating any rights afforded Mitchell regarding the parole consideration process or their decision to deny parole. It is undisputed that the defendants considered Mitchell for parole and, after reviewing records regarding his criminal, correctional, personal and social history, denied him parole based on their opinion that his release would not be compatible with society's welfare. *Exhibit 2 to the Supplemental Special Report of the Parole Defendants (Aff. of Cliff Walker) - Doc. No. 30-2* at 2; *Exhibit 3 to the Supplemental Special Report of the Parole Defendants (Aff. of William Wynne, Jr.) - Doc. No. 30-3* at 2. Mitchell concedes that the defendants' opinions regarding his incompatibility for release into society constituted the basis for the decision to deny him parole. Thus, the record is devoid of any evidence that the denial of parole was due to Mitchell's disability. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *see also McNely v. Ocala-Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (the ADA liability standard requires proof that the decision at issue occurred because of the alleged disability). Instead, the only evidence before the court demonstrates that the denial of parole was based solely on the defendants' determination that Mitchell was not deemed suitable for release on parole for reasons other than the fact that he was disabled. *Id*. In light of the foregoing, Mitchell's ADA claim provides no basis for relief.

## H.  State Law Claims

Throughout the amended complaint, Mitchell contends that the parole defendants have acted or failed to act in accordance with state laws governing parole with respect to the parole consideration process and the determination that he is not suitable for release on parole.  Mitchell further asserts that denying parole to eligible inmates violates provisions of the Alabama Criminal Code regarding the need for inmate rehabilitation and the prevention of arbitrary treatment of inmates.  To the extent that Mitchell asserts that the actions of the defendants violated state law, review of these claims is appropriate only upon exertion of this court's supplemental jurisdiction. Here, however, the exercise of such jurisdiction is inappropriate.[8]

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of

---

[8]The court also notes that its review of the complaint and evidentiary materials filed herein does not indicate any violation of state law.

the federal claims presented in the complaint, Mitchell's pendent state claims are due to

be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the

state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677

F.2d 818 (11ᵗʰ Cir. 1982).[9]

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 16, 2015, the parties may file objections to this

---

[9]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted. *Ala. Code* § 15-22-24(a). The law further gives the parole board total discretion in determining whether an inmate should be granted parole. § 15-22-26*, Ala.Code* (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society...."). The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489. The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489.  As the findings set forth herein make clear, there has been no flagrant or unauthorized action by the parole board or its members warranting interference by this court.

31

Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of March, 2015.


/s/ Susan Russ Walker_____
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE